**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| BLUE SPRINGS DENTAL CARE LLC, GREEN HILLS DENTAL KC LLC, HIGHLAND DENTAL CLINIC LLC, and KEARNEY DENTAL LLC, individually and on behalf of all others similarly situated, | Case No. 20-cv-383 <br><br> COMPLAINT <br><br> Class Action |
| Plaintiffs, | DEMAND FOR JURY TRIAL |
| v. | |
| Owners Insurance Company, | |
| Defendant. | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Blue Springs Dental Care LLC, Green Hills Dental KC LLC, Highland Dental Clinic LLC, and Kearney Dental LLC ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant Owners Insurance Company, ("Defendant"), state and allege as follows:

**NATURE OF ACTION**

1.     According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.     Plaintiffs are four dental clinics in the State of Missouri, each of which is wholly owned by Dr. Robert Klein, DDS. Highland Dental is located in Liberty, MO; Blue Springs Dental is located in Blue Springs, MO; Kearney Dental is located in Kearney, MO; and Green Hills Dental is located in Kansas City, MO. Dr. Klein is a second-generation dentist who opened up his first

1

dental practice, Highland Dental, in 2006. He opened his most recent locations, Kearney Dental and Blue Springs Dental in March and June 2019, respectively. Dr. Klein employs approximately 40 people across his four offices, as well as numerous independent contractors.

3.     Plaintiffs purchased all-risk commercial property insurance policies from Defendant to protect them in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss of Plaintiffs' property and have interrupted Plaintiffs' businesses. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiffs purchased. Moreover, Plaintiffs are not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic-related losses. Plaintiffs' policies with Defendant do not have virus exclusions and exemplify the broken promise from insurance companies across the country.  As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiffs have been forced to greatly reduce operations.

4.     This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by its property insurance agreements it sold to Plaintiffs and other businesses.

5.     The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiffs refer to both interchangeably as "COVID-19."

6.     Over 80,000 Americans have died of COVID-19 as of the date of this filing, according to the Centers for Disease Control and Prevention ("CDC").

7.     A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

8.     Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9.     Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

10.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air. According to the New York Times, 95% of the United States population currently is under one or more state or local directives to stay at home.

11.     The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, provide personal protective equipment to its workforce and prohibit customers from entering their facilities. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

3

12.     Plaintiffs are located in the State of Missouri. Highland Dental and Kearney Dental are located in Clay County. Blue Springs Dental is located in Jackson County. Green Hills Dental is located in Platte County. Kansas City, Missouri, Jackson County, Missouri, Clay County, Missouri, Platte County, Missouri, and the State of Missouri all have issued stay-at-home orders (hereafter, "Stay at Home Orders" or "Orders").

13.     The State of Missouri issued its stay at home order on April 3, 2020. On April 27, 2020, the State of Missouri issued the Show Me Strong Recovery Order ("Recovery Order"), which extended many of the restrictions imposed by the Stay at Home Order through May 31, 2020. The Stay at Home Order and the Recovery Order (collectively, the "Missouri Orders") both have caused the suspension of non-essential and essential businesses. As Missouri businesses, Plaintiffs are subject to the Missouri Orders.

14.     The City of Kansas City, Jackson County, Clay County, and Platte County imposed stay at home orders that went into effect starting on March 24, 2020.  The Kansas City and Jackson County Orders remain in effect.

15.      The American Dental Association ("ADA") and CDC stated that dentists should restrict their practices to urgent and emergency care treatments, which should be treated "as minimally invasively as possible."[1]

16.     Plaintiffs began limiting their services to emergency care only starting on or about March 17, 2020, and have remained at that limited operational capacity through the date of this Complaint, in accordance with the Stay at Home Orders and the guidance from the ADA and CDC. This has had a devastating effect on Plaintiffs' business. Plaintiffs are no longer permitted to

---

[1]      https://www.ada.org/en/press-room/news-releases/2020-archives/april/postponement-statement?utm_source=cpsorg&utm_medium=cpsalertbar&utm_content=cv-postponement-statement&utm_campaign=covid-19

4

perform routine cleanings, teeth whitenings, and general checkups, which make up the vast majority of their business. As a result, Dr. Klein reduced his operations to seeing patients for a half-day at the Highland Dental location only. Plaintiffs' revenues have decreased as much as over 90%.

17.     Plaintiffs have suffered direct physical loss to the property. Although ingress and egress to the property currently is limited due to the Stay at Home Orders and transmission concerns, according to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the recent months were infected with the coronavirus and thereby caused physical loss and damage to the property.

18.     The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiffs' or other Class members' businesses. For example, customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19.

19.      But Plaintiffs, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, they purchased property insurance from Defendant, that did not exclude pandemic coverage. A true and accurate copy of the Policy purchased by Plaintiff Highland Dental is attached hereto as Exhibit A. A true and accurate copy of the Policy purchased by Plaintiff Blue Springs Dental is attached hereto as Exhibit B. A true and accurate copy of the Policy purchased by Plaintiff Green Hills Dental is attached hereto as Exhibit C. A true and accurate copy of the Policy purchased by Plaintiff Kearney Dental is attached

hereto as Exhibit D. Each of the Policies are materially identical. For that reason, Plaintiffs will refer to Exhibit A as the representative Policy for purposes of this Complaint.

20. The Policies are comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in Plaintiffs' Policies are materially the same as those policies held by the members of the proposed class.

21. The Policies are all-risk policies, meaning they cover all "risks of direct physical loss" unless expressly excluded. Exhibit A at 47.

22. As set forth below, the Policies also provide coverage for:

    a. losses sustained due to the necessary interruption of business conducted by the Plaintiffs and caused by direct physical loss or damage ("Business Income" coverage) (*id.* at 85);

    b. interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (*id.* at 90);

    c. expenses incurred to minimize interruption of business ("Extra Expense" coverage) (*id.* at 85); and

    d. expenses necessary to protect covered property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 55).

23. On or about May 6, 2020, in response to Plaintiffs' notices of claim, Defendant denied coverage and refused to cover Plaintiffs' COVID-19 losses.

24. Defendant has caused material harm to Plaintiffs and the proposed class by refusing coverage under the Policies.

25. On behalf of themselves and the class, Plaintiffs seek to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## PARTIES

26. Plaintiff Highland Dental Clinic, LLC, is a Missouri limited liability company located in Liberty, Clay County, Missouri.

6

27.     Plaintiff Blue Springs Dental Care, LLC, is a Missouri limited liability company located in Blue Springs, Jackson County, Missouri.

28.     Plaintiff Green Hills Dental KC, LLC, is a Missouri limited liability company located in Kansas City, Platte County, Missouri.

29.     Plaintiff Kearney Dental, LLC, is a Missouri limited liability company located in Kearney, Clay County, Missouri.

30.     Defendant Owners Insurance Company is an Ohio corporation with its principal place of business located at 6101 Anacapri Boulevard, Lansing, Michigan.

## JURISDICTION AND VENUE

31.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

32.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this judicial district and division. The Policies at issue covers Plaintiffs' facilities located in the State of Missouri.

## FACTUAL BACKGROUND

33.     COVID-19 and the Stay at Home Orders have forced Plaintiffs to suspend most of their operations.

34.     There have been at least 9,918 confirmed cases of COVID-19 in the State of Missouri as of the date of this filing.

35. On April 3, 2020, the State of Missouri issued a stay-at-home order "to protect public health and prevent the further spread of COVID-19."[2] The Stay at Home Order required individuals residing in Missouri to avoid leaving their homes except as necessary to perform limited activities and to at all times practice social distancing.

36. On April 27, 2020, Missouri issued the Recovery Order, which took effect on May 4, 2020.[3] Although the Recovery Order lifted the absolute ban on leaving home for non-essential activities, it still imposes substantial restrictions on all Missourians. For example, it continues to require residents to at all time practice social distancing. The Recovery Order requires individuals performing job duties that require contact with other people close than six feet to "take enhanced precautionary measures to mitigate the risks of contracting or spreading COVID-19." The State of Missouri further directs Plaintiffs to pay special care to "[s]anitation, including disinfection of common and high-traffic areas" and to "follow "any guidance provided by the [CDC]."[4]

37. The ADA has urged dentists to restrict their practices to all but urgent and emergent dental care treatments, which include "severe dental pain from pulpal inflammation," "pericoronitis or third-molar pain," "tooth fracture," and "abscess or localized bacterial infection resulting in localized pain and swelling."[5]

38. The CDC similarly recommended that "dental facilities postpone elective procedures, surgeries, and non-urgent dental visits, and prioritize urgent and emergency visits and procedures now and for the coming several weeks."[6]

---

[2]      https://governor.mo.gov/priorities/stay-home-order
[3]      https://governor.mo.gov/sites/gov/files/media/pdf/2020/04/Economic-Reopening-Phase-1.pdf
[4]      https://governor.mo.gov/show-me-strong-recovery-plan-guidance-and-frequently-asked-questions
[5]      https://www.ada.org/en/publications/ada-news/2020-archive/march/ada-develops-guidance-on-dental-emergency-nonemergency-care
[6]      https://www.cdc.gov/oralhealth/infectioncontrol/statement-COVID.html

8

39.     On March 22, 2020, the City of Kansas City, Missouri issued a stay-at-home order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined in the order. On April 16, 2020, Kansas City extended the Order through May 15.

40.     Effective March 24, 2020, Jackson County, Missouri imposed a stay-at-home order requiring individuals in the county to avoid leaving their homes except as necessary to perform limited activities and to at all times practice social distancing. On May 1, 2020, Jackson County extended the Order through May 15, 2020.

41.     Effective March 24, 2020, Clay County, Missouri issued orders requiring Clay County residents to stay at home except for essential activities.[7]

42.     Effective March 24, 2020, Platte County, Missouri issued orders requiring Platte County residents to stay at home except for essential activities.[8]

43.     As of May 11, 2020, at least 42 states and countless local governments have issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

44.     According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[9] According to studies, the virus can live on surfaces for several days if not longer.[10]

---

[7]     https://www.clayhealth.com/DocumentCenter/View/1009/Clay-County-Public-Health-Emergency-Order---Updated-32220

[8]     https://www.plattecountyhealthdept.com/files/documents/COVID-19ReopeningPlanVersion041318034940050520PM.pdf

[9]     https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

[10]    https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

9

45. In addition, some scientific publications have reported finding COVID-19 in the air. The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[11]

46. A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[12]

47. An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[13]

48. The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[14]

---

[11]     https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[12]     https://www.nature.com/articles/d41586-020-00974-w
[13]     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[14]     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

49.     Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[15]

50.     Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[16]

51.     Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

52.     The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

53.     A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[17] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[18]

---

[15]     https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

[16]     https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

[17]     https://academic.oup.com/cid/article/58/5/683/365793

[18]     *Id.*

54.     The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

55.     State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

56.     The Stay at Home Orders in and around Plaintiffs' places of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

    a.  the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which states that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[19] (emphasis added);

    b.  the Clay County, Missouri "Public Health Emergency Order" states that the "County wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[20] (emphasis added);

    c.  the Johnson County, Kansas Order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson

---

[19]     http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

[20]     https://www.clayhealth.com/DocumentCenter/View/1009/Clay-County-Public-Health-Emergency-Order---Updated-32220

County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space."[21] (emphasis added);

57. In order to protect itself against risks like COVID-19, Plaintiffs purchased the Policies from Defendant. The Policies were in effect at the time of the outbreak and remain in effect today. Plaintiffs paid all premiums required by the Policies.

58. Plaintiffs are the Named Insured under their respective Policies.

59. Defendant is the effective and liable insurer of the Policies and policies meeting the class definition.

60. Generally, under property insurance policies like those issued by Defendant to Plaintiffs and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

61. The Policies are "all-risk" policies. They cover "risks of direct physical loss unless the loss" is excluded or otherwise limited. Ex. A. at 47.

62. The Policies do not exclude or limit coverage for losses from COVID-19 or pandemics.

63. The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

64. In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

---

[21]  https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20 Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

13

Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

65.     Despite the availability of a specific exclusion for viruses, Plaintiffs' Policies contains no relevant exclusion. Nor do Plaintiffs' Policies contain an exclusion for "pandemics," "communicable disease," or anything similar.

66.     Because damage due to viruses constitute physical damage and loss under the Policies, and/or the Stay at Home Orders have caused Plaintiffs to have lost the use of premises for their intended purpose, Plaintiffs' losses are covered under the Policies.

67.     The Policies provide coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions:

68.     Defendant is obligated to pay for actual loss of **"Business Income"** sustained due to direct physical loss or damage. Exhibit A at 85. Such losses are defined as actual losses.  *Id.* Plaintiffs have suffered lost business income because it has reduced operations of its business due to COVID-19.

69.     Defendant also agreed to provide coverage from an interruption to business caused by an order from a **"Civil Authority."** Exhibit A at 90. Specifically, Defendant agreed to pay for "actual loss sustained" when access to the covered property is prohibited by order of civil authority. *Id.* Access has been restricted to the Plaintiffs' property due to the presence and threat of COVID-19 as customers have been prohibited from entering the dining room.

14

70.     Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 85. Extra Expenses are costs that "would not have been incurred had there been no direct physical loss or damage." *Id.* at 85. Plaintiffs have suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

71.     Finally, the Policies also provide **"Sue and Labor"** coverage, which requires the insured to pay all expenses borne by the Insured due prevent actual or imminent loss. Exhibit A at 55. Plaintiffs have taken such steps by, for example, complying with the Stay-at-Home Orders.

72.     Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policies. Specifically, Plaintiffs' full operations have been largely suspended, and it has lost revenue and business opportunities.

73.     Plaintiffs submitted claims to Defendant for coverage under the Policies, but Defendant has denied Plaintiffs' claims.

## CLASS ACTION ALLEGATIONS

74.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiffs bring this action on behalf of themselves and all others similarly situated, and seeks to represent the following nationwide classes:

> d.     **Nationwide Declaratory Judgment and Injunctive Class.**  All businesses subject to a Stay at Home Order that are covered by one of the Defendant's policies which contains **Business Income, Civil Authority, Extra Expense,** and/or **Sue and Labor** coverage on terms similar to the Plaintiffs' policies ("Policies") which were in effect during the COVID-19 pandemic.

15

e. **Nationwide Breach Class.** All policyholders of Defendant who made a claim and were denied coverage under one of Defendant's Policies due to COVID-19.

f. **Missouri Subclass.** All policyholders who purchased one of Defendant's Policies in Missouri and was denied coverage due to COVID-19.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

75.     Plaintiffs' Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

76.     **Numerosity**. COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, hundreds or more policies issued with the relevant provisions. Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Missouri Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Missouri Subclass members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

77.     **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a. Do the Policies cover losses resulting from the COVID-19 pandemic?

b. Do the Policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

c. Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d. Does the **Business Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay-at-Home Orders?

e. Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay-at-Home Orders issued by state and local governments?

f. Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiffs and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

g. Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay-at-Home Orders?

h. Has Defendant breached its Policies by refusing to cover COVID-19 related losses?

i. Are Class members entitled to reasonable attorneys' fees and expenses?

78. **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of business are impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

79. **Typicality.** Plaintiffs' claims are typical of those of the Classes as Plaintiffs were subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

80. **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Missouri Subclass. The presentation of separate actions by individual Class members and Missouri Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

81. **Adequacy**. Plaintiffs are adequate representatives of the Class and Missouri Subclass because they are members of the Class and their interests do not conflict with the interests of those they seek to represent. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex class litigation.

82. **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

83. **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiffs reserve the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiffs reserve the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following provisions in the Policies: **Business Income, Civil Authority, Extra Expense,** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

18

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INCOME
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

84.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

85.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

86.     An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies. Plaintiffs requested coverage for COVID-19 related losses through its agent. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policies.

87.     Plaintiffs contend that Defendant has breached the Policies in the following respects:

a.     Plaintiffs and the class have suffered losses covered by the Business Income coverage in the Policies.

b.     Defendant is obligated to pay Plaintiffs and the class for those losses.

c.     Defendant has failed to pay Plaintiffs and the class for those losses.

88.     Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and request the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

89.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiffs further seek an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Income

19

Coverage Extension; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – BUSINESS INCOME
### (On behalf of Nationwide Breach Class and Missouri Subclass)

90. The preceding paragraphs are incorporated by reference as if fully alleged herein.

91. Plaintiffs and the class purchased property coverage policies from Defendant.

92. The Policies are valid and enforceable contracts between the Defendant and Plaintiffs and class members.

93. Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

94. Plaintiffs and the class have sustained a loss under the Business Income coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

95. Defendant has not agreed to pay the claim for Business Income or requested a proof of loss and has denied coverage.

96. Defendant has denied claims for Business Income related to COVID-19 on a uniform and class-wide basis, in breach of the policies.

97. As a direct and proximate result of Defendant's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Missouri Subclass)

98. The preceding paragraphs are incorporated by reference as if fully alleged herein.

99.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

100.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

101.    Plaintiffs contend that Defendant has breached the Policies in the following respects:

a.      Plaintiffs and the class have suffered losses covered by the Civil Authority coverage in the Policies.

b.      Defendant is obligated to pay Plaintiffs and the class for those losses.

c.      Defendant has failed to pay Plaintiffs and the class for those losses.

102.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

103.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiffs further seek an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT IV: BREACH OF CONTRACT – CIVIL AUTHORITY
### (On behalf of Nationwide Breach Class and Missouri Subclass)

104.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

105.    Plaintiffs and the class purchased property coverage policies from Defendant.

106.    The Policies are valid and enforceable contracts between the Defendant and Plaintiffs and class members.

107.    Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

108.    Plaintiffs and the class have sustained a loss under the Civil Authority coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home Orders.

109.    Defendant has not agreed to pay the claim for Civil Authority or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

110.    Defendant has denied claims for recovery under the Civil Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

111.    As a direct and proximate result of Defendant's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Missouri Subclass)

112.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

113.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

114.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

22

115. Plaintiffs contend that Defendant has breached the Policies in the following respects:

a. Plaintiffs and the class have suffered losses covered by the Extra Expense coverage in the Policies.

b. Defendant is obligated to pay Plaintiffs and the class for those losses.

c. Defendant has failed to pay Plaintiffs and the class for those losses.

116. Plaintiffs therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

117. Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiffs further seek an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

### COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE
### (On behalf of Nationwide Breach Class and Missouri Subclass)

118. The preceding paragraphs are incorporated by reference as if fully alleged herein.

119. Plaintiffs and the class purchased property coverage policies from Defendant.

120. The Policies are valid and enforceable contracts between the Defendant and Plaintiffs and class members.

121. Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

23

122. Plaintiffs and the class have sustained a loss under the Extra Expense coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home Orders.

123. Defendant has not agreed to pay the claim for Extra Expense or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

124. Defendant has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

125. As a direct and proximate result of Defendant's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

126. The preceding paragraphs are incorporated by reference as if fully alleged herein.

127. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

128. An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

129. Plaintiffs contend that Defendant has breached the Policies in the following respects:

a. Plaintiffs and the class have suffered losses covered by the Sue and Labor provision in the Policies.

b. Defendant is obligated to pay Plaintiffs and the class for those losses.

c. Defendant has not paid for those losses and is in breach.

24

130.   Plaintiffs therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

131.   Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiffs further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VIII: BREACH OF CONTRACT – SUE AND LABOR
### (On behalf of Nationwide Breach Class and Missouri Subclass)

132.   The preceding paragraphs are incorporated by reference as if fully alleged herein.

133.   Plaintiffs and the class purchased property coverage policies from Defendant.

134.   The Policies are valid and enforceable contracts between the Defendant and Plaintiffs and class members.

135.   Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

136.   Plaintiffs and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

137.   Defendant has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

138. Defendant has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

139. As a direct and proximate result of Defendant's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a. That the Court enter an order certifying the class, appointing Plaintiffs as representatives of the class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b. For a judgment against Defendant for the causes of action alleged against it;

c. For compensatory damages in an amount to be proven at trial;

d. For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policies;

e. For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

f. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g. For Plaintiffs' attorney's fees;

h. For Plaintiffs' costs incurred; and

i. For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues so triable.

Date: May 13, 2020                    Respectfully submitted,

                                       **STUEVE SIEGEL HANSON LLP**

                                       *s/ Patrick J. Stueve*
                                       Patrick J. Stueve, MO #37682
                                       Bradley T. Wilders, MO #60444
                                       Curtis Shank, MO #66221
                                       460 Nichols Road, Suite 200
                                       Kansas City, Missouri 64112
                                       Telephone:    816-714-7100
                                       Facsimile:    816-714-7101
                                       Email:        stueve@stuevesiegel.com
                                       Email:        wilders@stuevesiegel.com
                                       Email:        shank@stuevesiegel.com

                                       **LANGDON & EMISON LLC**

                                       J. Kent Emison, MO #29721
                                       911 Main Street
                                       PO Box 220
                                       Lexington, Missouri 64067
                                       Phone: (660) 259-6175
                                       Fax: (660) 259-4571
                                       kent@lelaw.com

                                       **MILLER SCHIRGER LLC**

                                       John J. Schirger, MO # 60583
                                       Matthew W. Lytle, MO #59145
                                       Joseph M. Feierabend, MO #62563
                                       4520 Main Street, Suite 1570
                                       Kansas City, MO 64111
                                       Telephone: (816) 561-6500
                                       Facsimile:   (816) 561-6501
                                       jschirger@millerschirger.com
                                       mlytle@millerschirger.com
                                       jfeierabend@millerschirger.com

                                       *Attorneys for Plaintiffs and the Proposed Classes*